HEARD APRIL TERM, 1878.

## CHANDLER *vs.* GERATY.

The decision in this case as reported in 5 S. C., 501, explained.

Where a tract of land is sold as a plantation, its fitness for culture is the chief, but not the only, element of value, and on the trial of an issue to determine its value it is error to confine the examination of the witnesses to the question as to the fitness of the land for culture.

Propositions for a compromise made by a party to an action *held* to have been properly excluded as testimony against him, it being the policy of the law to encourage compromises and not to discourage them by holding the party to his offer.

BEFORE WALLACE, J., AT CHARLESTON, FEBRUARY, 1878.

This was a second trial of the case of *Chandler* vs. *Geraty,* reported 5 S. C., 501, to which report reference should be had for a full understanding of the case as now reported.

At this second trial the plaintiff offered his own testimony, taken by commission, to the effect, amongst other things, that during the negotiation for the purchase of "Martin's Point," Geraty represented that it was the best location on the river for a store, and that his (Geraty's) main object in buying the land was to get the point for a store, and that he cared very little about the land for cultivation; that there was a dwelling house on the place near the landing, a store near the landing, a cotton house and some negro houses; that Geraty knew the land before he purchased it; that at the time of the agreement to sell there was nothing said about the number of acres which the tract contained, but it was afterwards agreed that there should be a survey to ascertain what was the number of acres, and Geraty then proposed that if the plaintiff "would discount $500 he would take the place without having a survey."

The defendants objected to the testimony taken by commission, and His Honor excluded it, holding that the only issue was as to the fitness of the place for culture, and that such testimony was irrelevant. Other testimony was offered by the plaintiff, to which objections were made and sustained, and the defendants were allowed to introduce a plat of the land, dated in 1822, without calling the party who made it, and also a certified copy of a former deed of conveyance of the same land without notice; and a witness for the defendants was allowed to testify that he was perfectly familiar with the lands in dispute, and that the plat and deed given in evidence correctly represented the amount of land (eight hun-

dred acres) which the tract contained and the quantity of marsh and upland.

The jury found for the plaintiff $57.33, and he appealed.

*Campbells & Whaley*, for appellant.

*DeSaussure & Son*, contra.

November 22, 1878. The opinion of the Court was delivered by

McIVER, A. J. The action in this case was upon a bond given to secure the payment of the purchase money of a plantation on Wadmalaw Island. The condition of the bond contains these words: "This bond subject to an apportionment, if, on a survey, there proves a deficiency of the land for the purchase of which this bond is given."

The plantation was represented as containing twelve hundred acres, a part of which was marsh and a part high land. On the survey there proved to be a deficiency of over seven hundred acres, leaving only one hundred and eighty-nine acres of high land and two hundred and fifty-seven acres of marsh land, and the question was, how much should the bond be reduced by reason of such deficiency? By a previous decision of this Court, (5 S. C., 501,) it was determined that the land was sold as a plantation, and, therefore, fitness for culture was the chief element of value, and that, to carry into effect the true intent of the contract, it was necessary to reduce the sum to be paid to the actual value of the property sold, which value must be ascertained by considering the gross price at which the twelve hundred acres was estimated, and the relative quantities and values of the two kinds of land the tract was then assumed to contain, as well as the relative quantities and values of the two kinds of land which the tract was ascertained by the survey actually to contain. This we understand to be the proper construction of that decision, by which, of course, we, as well as the Circuit Court, must now be guided. The Circuit Judge, however, seems to have construed that decision as if it held that fitness for culture was not merely the *chief* but the *only* element of value. It may be very true that, in estimating the value of a plantation, fitness for culture is the *chief* element to be considered, but it is not true that it is the only element. The location of a plantation, its convenience to market, &c., often constitutes a very material element in estimating

the value of a tract of land as a plantation. So, too, the improvements upon it appurtenant to agricultural purposes often add greatly to the value of a place which is bought and sold exclusively for planting purposes. It is every day's experience that a plantation well supplied with barns, stables and other structures necessary for farming purposes will sell for more—is of more real value—even when purchased only as a plantation, than one of a similar quality of soil, or of equal fitness for culture, without these necessary conveniences. Even the condition of the fencing often affects the saleable value of a plantation. So that to confine the testimony strictly, as was done, to the fitness of the land for culture, was not in accordance with a correct view of the former decision of this Court, and was erroneous.

One of the witnesses was asked: " What was the most valuable part of this property as a plantation? How would the products of the place reach the market?" These questions were objected to and the objection was sustained. In this we think there was error, for it was excluding an inquiry into what, as we have seen, was one of the elements of value in a plantation—its accessibility to market. Certainly if a purchaser buys a plantation represented as fronting on the water, by means of which easy access to market may be had, and it should turn out that the water front, embracing a narrow strip of but a few acres, is covered by a paramount title, whereby access to market is cut off, or rendered much more expensive and difficult, it would not do to say that the value of the plantation, merely as a plantation, is impaired only to the extent of the value of these few acres, estimated solely with a view to their fitness for culture. Again, if a purchaser of a plantation loses, by paramount title, a single acre upon which the farm buildings happen to be located, no one would contend that the purchase money should be reduced only to the extent of the value of this one acre, estimated solely with a view to its fitness for culture. The correct rule would be to estimate, not what was the value of the buildings, because they might be much more expensive than was necessary for farming purposes, but how much is the value of the land as a plantation diminished by the loss of this acre containing the farm buildings. So, on the other hand, if a plantation well supplied with all the necessary improvements, and having convenient and easy access to the market, is purchased at a gross price, and there should prove to be a deficiency in some part of it, not affecting these conveniences,

it surely will not do to say that, in ascertaining the amount to which the purchase money should be reduced, the part so lost must be estimated as of equal value per acre with the part containing the improvements and affording the conveniences to market, which perhaps enhanced largely the gross value of the place, simply because all of the land was of equal fertility or equally fitted for culture. The deficiency contemplated by the contract in this case was not merely a deficiency in quantity but in value also. Hence, in determining how the bond is to be apportioned, *all* the elements of value in the place as a plantation must be considered, and to confine the testimony to *one* of those elements, even though it be the chief one, was error.

The other exceptions taken to the rulings below we do not think can be sustained.

The letters of Geraty, by which the appellant proposed to show his knowledge of the boundaries of the land and the area thereof, as well as his estimate of the value of the deficiency in the land, were properly excluded. In the first place, the letters set forth in the case, submitted by the appellant, do not show any such knowledge; but, if they did, the terms of the contract provided that this should be determined, not by any knowledge or estimate of the parties, but by a survey; and it would be clearly incompetent to vary this material part of the contract by substituting any other mode of measurement for that fixed by the contract—the survey—unless there had been evidence showing that the parties had agreed to vary or waive this material part of the contract, and there was no such evidence. For the same reason, so much of the testimony of the plaintiff as related to the same matter was incompetent. We are unable to perceive how this kind of testimony could have availed the plaintiff to show fraud on the part of the defendants, even were it allowable to do so under the state of the pleadings. The defendants may have had, and doubtless did have, a general idea of the extent and boundaries of the place, but the very fact that a special provision was inserted in the contract whereby these matters were to be determined by a survey shows that defendants were not governed and were not expected to be governed by their previous knowledge of the area or boundaries of the land.

So much of the plaintiff's testimony as tended to show the value of the land on account of the eligible site it afforded for a store, and that this was a consideration moving the defendants to make the

purchase, was inconsistent with the principles established by the former decision of this Court, and was, therefore, properly excluded. As to what is called the estimate which the defendants placed upon the amount of the deficiency, by their offers to agree to certain spe-. cified reductions of the amount of the bond, it is very manifest that such testimony was properly ruled out. These propositions were made simply with a view to avoid litigation, and it is against the policy of the law to discourage parties from attempts to settle their differences by holding them up to any propositions they may make in the course of negotiations for that purpose after such negotiations have failed. The amount of it was simply this : we will settle upon the proposed terms if you are willing to do so, otherwise the Court must determine. The refusal of the plaintiff to accede to the terms proposed released the defendants from their offers, and the case must be considered as if no offers of a settlement had been made.

The objection to the use of the copy plat and deed was properly overruled for the reasons stated by the Circuit Judge.—See also *Lawry* vs. *Pinson*, 2 Bail., 324.

The judgment of the Circuit Court is set aside and a new trial ordered.

*Willard,* C. J., concurred.

HASKELL, A. J., dissenting. I cannot concur, as I perceive no inconsistency in the ruling of the Circuit Judge under the previous decision of this Court in the same case.